IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

03 SEP 24 PM 3:07

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GEORGE THOMASON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OCCIDENTAL FIRE AND CASUALTY )<br>COMPANY OF NORTH CAROLINA, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 00-PWG-2402-S<br><br>**ENTERED**<br><br>SEP 2 4 2003 |

<u>MEMORANDUM OF OPINION</u>

George Thomason, plaintiff, filed a complaint in this court against defendant Occidental Fire and Casualty Company of North Carolina, alleging breach of contract and bad faith failure to pay. This court has jurisdiction pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. This matter is before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

Occidental has filed a motion for summary judgment (doc. # 19). Occidental argues that Thomason's vehicle was not a covered vehicle under the policy due to his failure to notify Occidental within 30 days of acquisition and that Occidental had a legitimate or arguable reason to deny the claim. Thomason responds that, because the vehicle was inoperable when purchased, it was not actually acquired until repairs were completed immediately before the vehicle was destroyed, and, therefore, the vehicle was automatically covered by the Occidental policy.

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima

facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to Thomason, the nonmoving party. On October 4, 1999 the Thomason purchased an inoperable 1996 Peterbilt tractor truck that had been involved in an accident. (Depo. of Thomason, p.51). When Thomason purchased the 1996 truck, he already owned a 1987 Peterbilt tractor truck which was insured by a policy of insurance ("Business Auto Policy" Number A 63 27 11) with Occidental.

(Depo. of Thomason, pp.32-34, 205, Exhibit 1 to depo. of Thomason). He also owned a 1999 Chevrolet pickup and a 2000 Chevrolet Blazer which were insured by State Farm. (Depo. of Thomason, pp.54-55).

Thomason purchased the 1996 Peterbilt with the intention of rebuilding it to replace the 1987 tractor. (Depo. of Thomason, p.40, Affidavit of George C. Thomason, at ¶¶ 2-4). Before the truck could be put into use, the vehicle needed extensive bodywork, a new sleeper, a new hood, engine work, new wheels and tires, and many other incidental repairs (Depo. of Thomason, p.46-47,50, 57). The repairs on the 1996 Peterbilt continued through mid-April of 2000 (Depo. of Thomason, pp.98-99, Affidavit of George C. Thomason, at ¶¶ 5-6). Thomason's testified that the vehicle was not *at issue here* "road-ready," or suitable for operation over-the-road until just days prior to the loss (Depo. of Thomason, pp. 196,207, Affidavit of George C. Thomason, at ¶¶ 5-6).

On Saturday, April 15, 2000, Thomason entered into a bill of sale with a third party (Toby Rutherford) to sell his 1987 Peterbilt. Thomason executed a bill of sale for the 1987 Peterbilt on that date, and received a check for payment in regard to the same. Upon selling the 1987 Peterbilt, Thomason took the tag off the 1987 Peterbilt and placed it on the 1996 Peterbilt. (Affidavit of George C. Thomason, at ¶ 7). After taking the check for the proceeds from the sale of the 1987 Peterbilt to the bank, Thomason went to Murphy's Insurance to inform his agent that he had substituted the 1996 Peterbilt for the 1987 Peterbilt. Due to a change in office hours, Murphy's Insurance was no longer open all day on Saturdays and no one was at the agency office except for a janitor. (Affidavit of George C. Thomason, at ¶ 8). On Monday, April 17, 2000, at approximately 3:00 a.m., Thomason was contacted at home by the Jefferson County Sheriff's Department and was informed that his vehicle, which was still located at the repair shop, was on fire.

3

Thomason testified that prior to the fire he told Frances, the secretary at Murphy's Insurance, the agency through which he purchased the Occidental policy, "that I was going to update my equipment, and I had bought a truck, and when I got it road ready, I was going to, you know, swap it out." (Depo. of Thomason, pp.107-08, 114). Thomason testified that Frances said, "Well, when you get it ready, George, come up here, because you got a grace period." She said, "You can transfer it over." (Depo. of Thomason, p.114).

On questioning by his own lawyer Thomason testified he told Frances:

> "I'm fixing to update my truck." She says, "You are?" I said, "Yes, I bought a truck that is wrecked.
>
> I told her, I said, "I'm fixing to update it," and she said, "Well, George, we can't put insurance on a truck that is not road ready." I said, "Okay." But she said, "Just let me know just about the time you get it ready, and I'll swap it over.
>
> She said, "You fixing to sell your old truck, ain't you?" I said, "Yeah." I said, "As soon as I get ready, I'm going to swap it over.

After the loss Thomas notified Occidental and made a claim on his policy for property damage. On or before April 22, 2000 the adjuster handling the claim for Occidental created a document entitled "Coverage Question" which contained the following handwritten recommendation for future handling:

> Insufficient information to make an informed coverage decision. The fact that 96 PB was not operational at time of purchase, may affect legal definition of 'acquired' .... Need in person statements from insured ... proof of purchase, condition of 96 PB and when exactly was or when did 96 PB become operational. <u>All we need is proof of purchase</u> – if it is more than 30 days prior to loss – <u>No Coverage.</u>

(Plaintiff's Exhibit B) (emphasis in original).

4

On April 25, 2000 the claim was assigned to Cunningham-Lindsey, a local adjusting and investigating company, for handling by Larry Lichtenberg (see Exhibit "D"). Occidental requested a chronological rendition of events relative to the acquisition of the 1996 Peterbilt. In a handwritten report dated April 26, 2000 Lichtenberg reported that the vehicle was not road-worth at the time of acquisition, and that the vehicle was not repaired and delivered until April 14, 2000. Thomason has testified that Lichtenberg informed him that there would be coverage for the vehicle. (Depo. of Thomason, pp.136-137).

Occidental's claim file includes an e-mail memo dated April 26, 2000 which contains the following text:

> I've got a couple of claim issues I want to "discuss" with you....
>
> The above bought a tractor but didn't add it to the policy as it was having repair work done. Before he added it it burnt to the ground. Now, I want to know if ya'll are going to pay for a $50,000. tractor that wasn't scheduled? The agent has repeated to me on more than one occasion that "he should have added it when he bought it." Please tell me that I am not going to [get] hit with a $50,000. loss ?!?!?!?

(See Plaintiff's Exhibit E).

On April 27, 2000 the following handwritten notation appears in Occidental's claim file:

> Phyllis, Instead of getting legal opinion on coverage, contact [Plaintiff's attorney] and request in writing the theory of why this loss should be covered by out policy. I would fax [attorney] a brief letter indicating that we question coverage, but would await final decision until we [receive] his written opinion with authority to support his theory of coverage. Cranston. PS – Let me know what his reply is.

(See Plaintiff's Exhibit F).

5

Shortly after April 28, 2000 Occidental received a four (4) page typewritten report from adjuster Lichtenberg (Plaintiff's Exhibit G) verifying Thomason's chronology, as well as noting that "Mr. Thomason makes a highly credible witness on his own behalf, eye contact was good, as the validity of his story was consistent and highly credible."

On or about May 2, 2000 Occidental received a written correspondence from Robert L. Austin, Thomason's attorney, which informed Occidental of Thomason's contention that (1) the vehicle was not operational and not insurable until April 15, 2000; (2) that on April 15, 2000 the vehicle was delivered for operation, and on that date Thomason attempted to notify Occidental's agent of the substitution; and (3) that Lichtenberg had reviewed the policy and documentation, and informed Austin and Thomason that, in his opinion, coverage would be provided by the policy. (See Plaintiff's Exhibit H).

On or about May 5, 2000 a handwritten log activity note in Occidental's claim file has the following notations:

> Need to open up coverage – $1.00
>
> 5/5/00 Phyllis, (Attorney) Austin says "(insured vehicle) not in an insurable condition" at time of purchase. Insured states he paid ($24,000) for salvage vehicle. I believe there was an insurable interest. If (insured vehicle) had been stolen during first 30 days, Insured (would0 be making a claim and expect his policy to provide coverage. (illegible) lost occurred after 30 days, insured is arguing there was no insurable interest. I am not sure insured can have it both ways. I believe we would have to provide liability coverage on a 3rd party claim even if we did not insured [sic] (insured vehicle), but because of MSC-90 endorsement we would have a claim against insured for indemnity. Now on a 1st party claim, we do not have public to protect, therefore, if we can show there was an insurable interest from time of purchase ($24,000) we should be able to argue since insured did not ask us to insure vehicle until after loss, our policy should not have to comply.

> – Suggest you fax Austin a note and tell him we will get a legal opinion since he did not provide an "authority" as requested. You will need certified copy of policy. Cranston

(Plaintiff's Exhibit I).

On May 5, 2000, Occidental notified Austin in a speed letter "We are getting a legal opinion of this since you did not provide authority to support your theory of coverage." (Plaintiff's Exhibit J). On June 6, 2000, Lane Finch, attorney for Occidental, forwarded an opinion letter to attorney Robert Austin, which set forth Occidental's purported legal basis for denial.

> Mr. Thomason did not notify Occidental within 30 days after he acquired the '96 Peterbilt that he wanted Occidental to insure it for coverage.
>
> It is Occidental's opinion that Thomason's failure to notify it of his desire to insure the '96 Peterbilt within 30 days of acquisition precludes coverage for the April 17, 2000 loss.

(Plaintiff's Exhibit K).

On August 1, 2000, Brian Davidson, attorney for Thomason, wrote a letter to Finch (Plaintiff's Exhibit L) pointing out that Finch's letter did not address the fact that the 1996 Peterbilt was inoperable until approximately April 15, 2000. Davidson argued that because "acquire" and "own" were not defined in the policy the terms were ambiguous and due to be liberally construed in favor of the insured. He further argued:

> A reasonable construction of these terms in respect to the Occidental policy would infer that the automobile be acquired and owned for actual use in Mr. Thomason's business for which the policy applies. Therefore, Mr. Thomason did not "acquire" or "own" the 1996 Peterbilt until it became operable for use in his business.

7

Davidson cited several cases in this letter including *Government Employees Insurance Company v. Berry*, 724 F.Supp. 872 (M.D. Ala. 1989) and *Glen Falls Insurance Company v. Gray*, 386 F.2d 520 (5th Cir. 1967).

On August 4, 2000, Finch responded to Davidson (Plaintiff's Exhibit M) stating that the "terms 'acquire' and 'own' are not ambiguous in the policy and when you apply the dictionary definitions of those terms, you will see that Mr. Thomason acquired (gained possession or control of) and came to own (to have or to possess) the Peterbilt on October 4, 1999." He further distinguished authorities cited by Davidson and invited Davidson to supply any missing facts and documents relating to the condition of the 1996 truck at the time it was purchased and any improvements to it.

I. <u>Breach of Contract Claim</u>

Because jurisdiction in this case is based on diversity of citizenship, Alabama's substantive law applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Royal Insurance Co. of America v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001). This court must "decide the case the way it appears the state's highest court would." *Whitaker, supra*, quoting *Towne Realty, Inc. v. Safeco Ins. Co.*, 854 F.2d 1264, 1269 n.5 (11th Cir. 1988).

While it is true that Alabama has not dealt with the precise question currently before the court, certain general principles of contract law satisfy this court that the result reached below is the correct one.

In *Aetna Casualty and Surety Co. v. Chapman*, 240 Ala. 599, 200 So.425 (Ala. 1941), the Supreme Court of Alabama set forth certain insurance principles which remain Alabama law today:

> Polices of insurance being carefully prepared by the insurer, when containing provisions reasonably subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured shall prevail. As sometimes stated the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases.
>
> In giving effect to this rule it is equally important that the contract made by the parties shall prevail, and no new contract be interpolated by construction.
>
> Provisions clearly disclosing their real intent are not to be given a strained construction to raise doubts where none reasonably exist.

200 So. at 426-27. See also, *State Farm Fire & Casualty Company v. Slade*, 747 So.2d 293, 310 (Ala. 1999)(quoting the above rule of construction from *Chapman*).

The decision in *Slade*, 747 So.2d at 308-09, provides guidance in determining whether a policy provision is ambiguous:

> The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide. ... "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court....
>
> The test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. (citations omitted). The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning. (citation omitted). In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. (citation omitted). This means that the terms of an insurance policy should be given a rational and practical construction. (citation

>omitted). Also, a court cannot consider the language in the policy in isolation, but must consider the policy as a whole. (citation omitted).

747 So.2d at 308-09 (citations omitted).

In *Slade*, the court looked first to the dictionary in attempting to determine the common meaning of the terms of the policy.

The policy provision at issue in this cases addresses which autos are covered autos and provides in pertinent part:

>B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS
>
>....
>
>2. ... an auto you acquire will be a covered auto for that coverage only if:
>
>>a. We already insure all autos that you own for that coverage or it replaces an auto you previously owned that had that coverage; and
>>
>>b. You tell us within 30 days after you acquire it that you want us to insure it for that coverage.

(Exhibit 1, to Thomason's depo.).

Part I.D of the policy defines "auto" as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads but does not include mobile equipment." (Exhibit 1 to Thomason's depo.).

It is undisputed that the 1996 Peterbilt was inoperable when Thomason purchased it on October 4, 1999. Thomason argues that the fact that the 1996 truck was inoperable is important because the 1996 truck could not become a replacement for the 1987 truck until it became operable shortly before April 15, 2000.

There is nothing ambiguous about the term "acquire." The Concise American Heritage Dictionary defines acquire in the following manner: "To gain possession of." Possess is defined as "1. To have as property; own. 2. To have as an attribute. 3. To exert influence or control over; dominate."

The *Chapman* court held:

> "Acquires ownership," we must conclude clearly means such ownership as the ordinary man ascribes to his own, the property right which he holds as owner, the right of user, and interest in its protection which goes with a sense of ownership.

200 So. at 427.

"Replace" is defined as "1. To put back in place. 2. To take or fill the place of."

The practical construction of the policy requires that an insured give the company 30 days notice that insurance is sought when an insured acquires a replacement auto. Further, a practical construction of the policy requires that the acquisition either precede or be simultaneous with the replacement of the auto. To find that one can postpone the act of acquisition based on the fact that the vehicle was inoperable would require a strained and contorted construction of the policy. Likewise, to find that one can somehow transform a vehicle, whether operable or inoperable, into a replacement vehicle six months after acquiring it would also required strained and contorted construction of the policy.

This result is not inconsistent with the result reached in *Government Employees Insurance Company v. Berry*, 724 F.Supp. 872 (M.D. Ala. 1989). In *Berry*, although the replacement vehicle at issue, a 1981 Mercedes Benz, was the third replacement vehicle for the scheduled vehicle, a 1982 Toyota, there was never a gap between the time that the insured acquired a vehicle as a replacement and discontinued use of the vehicle which had just been replaced. The 1982 Toyota was sold in

11

July 1986 and replaced by a 1986 Dodge Caravan purchased in August 1986; the 1986 Dodge Caravan was sold in September and a 1979 Mercedes Benz was purchased to replace the Caravan. While the insured still owned the 1979 Mercedes Benz when he purchased the 1981 Mercedes Benz he discontinued use of the 1979 Mercedes Benz when he purchased the newer model. He sold the 1979 Mercedes Benz on September 30, 1987. The 1981 Mercedes Benz was stolen in November 1987. *Berry* is also distinguishable. In *Berry*, there was no requirement of notice within a specific number of days of the replacement for purposes of coverage.

In *Glens Fall Insurance Company v. Gray*, 386 F.2d 520 (5th Cir. Fla. 1967), also relied on by Thomason, the court interpreted a notice provision in a policy related to premiums rather than a notice requirement as to covered vehicles. In *Gray*, the insured was to notify the company "during the policy period" of acquisition or replacement of vehicles while in the case before this court, the policy specifically provides for notice within 30 days. Further, the *Gray* court's discussion emphasized "we are concerned with the year in which ownership was acquired for a particular purpose – that of automobile liability insurance." The court went on to conclude in that an inoperable vehicle "can hardly be thought to be ownership for liability insurance purposes." The coverage at issue here is not liability but comprehensive coverage.[1] Finally and perhaps most important, in *Gray*, "the Company was on notice in the policy year, after the repairs had been completed, that coverage was then desired and requested." In the case before this court, Occidental

---

[1] Whether coverage sought is liability coverage or comprehensive coverage arguably makes a difference. In the case of liability coverage, if the previously inoperable vehicle can "morph" into a replacement vehicle upon being made operable, the insurance company would have only one liability exposure at any time. Where, as here, the issue is comprehensive coverage, the insurance company would conceivably have double comprehensive exposure based on the operable vehicle and the inoperable vehicle which would increase in value as steps were taken to make it operable.

was NOT on notice that repairs had been completed and that coverage was requested. For these reasons, the court concludes that *Gray* is not persuasive authority.

The fact that Thomason was making repairs on the 1996 Peterbilt truck until April, 2000 did not postpone the date of acquisition. Further, the fact that Thomason continued to use the 1987 Peterbilt after purchasing the 1996 Peterbilt in October 1999 would lead this court to conclude that the 1996 truck was not a replacement for the 1987 truck; however, even if it was a replacement, the replacement of the 1987 Peterbilt would have to relate back to the acquisition of the 1996 Peterbilt and Thomason's failure to provide notice within thirty days would defeat coverage. Occidental is entitled to summary judgment on the breach of contract claim.

In *Slade*, the Alabama Supreme Court recognized that contractual liability is a prerequisite for liability for bad faith. 747 So.2d 317-21. See also, *Acceptance Insurance Company v. Brown*, 832 So.2d 1 (Ala. 2001). Based on this court's holding that there is no coverage and that Occidental is entitled to summary judgment on the breach of contract claim, Thomason's claim for bad faith must also fail. Occidental is entitled to summary judgment on the bad faith claim.

Based on the foregoing, the Court concludes that Occidental's motion for summary judgment is due to be granted. The court further concludes that the motion for hearing (doc. #31) is MOOT. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the __24th__ day of September, 2003.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE